UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PRIMO'S RESTAURANT,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL CHERTOFF, as Secretary of the Department of Homeland Security;<br>DR. EMILIO GONZALEZ, as Director of U.S. Citizenship & Immigration Services;<br>Paul NOVAK, as Center Director of the U.S. Citizenship & Immigration Services for the Vermont Service Center,[1]<br><br>Defendants. | **Civil Action No. 04-12162-NG** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT TO AFFIRM ADMINISTRATIVE DECISION**

**I.
INTRODUCTION AND SUMMARY**

The Plaintiff, Primo's Restaurant ("Primo's"), brought this action under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, challenging the July 9, 2004 denial of an I-140 Petition for an Immigrant Worker by the Vermont Service Center ("VSC") of the U.S. Citizenship and Immigration Services ("CIS").[2] The VSC denied the petition because Primo's had not established its ability to pay the immigrant worker the proffered wage. On

---

[1] Since the pendency of this case, a number of Defendants, sued in their official capacity, have changed. Pursuant to Fed. R. Civ. P. 25(d)(1), the names of these officers' successors are automatically substituted as a party.

[2] The Homeland Security Act of 2002 abolished the Immigration and Naturalization Service ("INS"), 6 U.S.C.A. § 291(a), and transferred its functions to the CIS, a bureau of the Department of Homeland Security. 6 U.S.C.A. § 271(a). The statute establishes the position of Director of the Bureau of Citizenship and Immigration Services, whose functions include adjudicating immigrant visa petitions. 6 U.S.C.A. § 271(b)(1).

administrative appeal, the CIS Administrative Appeals Office ("AAO") affirmed the VSC decision.  Primo's now challenges the decision arguing that it submitted sufficient evidence to establish its ability to pay the proffered wages.  Primo's further argues that the agency's decision was arbitrary and not in accordance with the law under the APA, 5 U.S.C. § 701 *et seq.*

As explained below, the CIS's review process and final decision are supported by the facts established in the VSC and AAO Administrative Record and applicable regulations and law.

## II.
## STATEMENT OF RELEVANT FACTS

The parties to this action are briefing cross-motions for summary judgment under Fed. R. Civ. P. 56 and Local Rules 7.1 and 56.1.  Local Rules 7.1 and 56.1 require motions for summary judgment to include concise statements of the material facts of record as to which the moving party contends there is no genuine issue to be tried.  Oppositions to motions for summary judgment must  include a concise statement of the material facts of record as to which it is contended there exists a genuine issue to be tried.

The Administrative Record (hereinafter referred to as "AR") was compiled, and a copy of the AR is being provided to the Court manually and under seal with this Memorandum In Support as Exhibit A .  The AR is being filed under seal because immigration and federal tax forms with personal and corporate identification information, that could not be easily redacted, appear throughout the AR, and because the AR exceeds the size limit for electronic filing.

It is well established that in actions such as this one, where Plaintiff seeks judicial review under the APA 5 U.S.C. § 706, the scope of review is properly limited to the facts established in the administrative record that was before the agency at the time the decisions were made.  See, e.g., Albathani v. INS, 318 F.3d 365, 372 (1st. Cir. 2003); Elatos Restaurant Corp. v. Sata, 632 S. Supp. 1049, 1053 (S.D.N.Y. 1986), Occidental Eng'g Co. v. INS, 753 F.3d 766, 769 (9th Cir. 1985) ("[t]he function of the district court is to determine whether or not as a matter of law evidence in the administrative record permitted the agency to make the decision that it did."). Thus, there are no material facts for the Court to resolve in this action, as contemplated by Local Rule 56.1.  Rather, the Court's role is limited to determining whether the facts as found by the Defendant are reasonable and supported by the record.  A procedural and factual summary of the record is set forth below:

1. Primo's is a restaurant located in Boston, Massachusetts. (Pl.'s Compl. ¶ 2.)

2. Primo's filed an I-140 Immigrant Worker petition in order to obtain an employment-based worker petition for Bahadur Singh ("Singh') as an unskilled worker under the Immigration and Nationality Act ("INA") § 203(b)(3)(A)(I), 8 U.S.C. § 1153(b)(3)(A)(I). (Pl.'s Compl. ¶ 9; AR at 66-67.)

3. Primo's submitted an Application for Alien Employment Certification, Form ETA 750, to accompany the petition. (AR at 69-72.) The Form indicated that Primo's intended to employ Singh as a cook, at a rate of $13.02 per hour, equal to $27,081,60 per year. (AR at 69.)

4. The Form ETA 750 was certified and accepted for processing on April 30, 2001. (AR at 68.)

5. On Form ETA 750B, submitted with the petition and signed by Singh, Singh claimed to have worked for Primo's since March 2000. (AR at 70.)

6. Primo's submitted a copy of the 2001 Massachusetts Business or Manufacturing

Corporation Excise Return in support of its petition.[3] (AR at 73-74.)

7. The return did not show Primo's net income. Rather, it showed that, at the end of 2001, it had current assets of $67,641 (total tangible assets plus cash), but the total current liabilities could not be computed from the data included in the return, and thus Primo's 2001 year-end net assets could not be computed. (AR at 74.)

8. On February 3, 2004, the VSC requested additional evidence pertinent to Primo's ability to pay, specifically, Primo's 2001 Federal tax return or 2001 annual reports with audited financial statements. The VSC also requested that Primo's submit a copy of its 2001 Federal Form W-2 Wage and Tax Statements ("W-2") showing the amount paid to Singh in that year. (AR at 75.)

9. Primo's submitted its 2001 Form 1120 U.S. Corporation Income Tax Return ("Form 1120"), which indicated that it declared a loss of $20,491 for 2001. (AR at 21.) The Schedule L accompanying the Form 1120 indicated that Primo's had assets (cash plus inventory) of $6,417 and liabilities of $2,949 (accounts payable plus other current liabilities) yielding $3,468 in net current assets for the year. (AR at 24.)

10. Primo's did not submit Singh's 2001 W-2 form, as the VSC requested. Instead, Primo's submitted four pay stubs, dated February 2, 9, 16, and 23, 2004, indicating that it paid Singh $530 per week for these four weeks. (AR at 93-96.)

11. On July 9, 2004, the VSC denied Primo's visa petition on the grounds that the submitted evidence did not establish that it had the "ability to pay the offered wage at the time of filing." (AR at 63-64.)

12. On July 23, 2004, Primo's submitted a Notice of Appeal to the Commissioner, Form I-290B appealed the VSC decision. (AR at 15.) The appeal was filed on August 9, 2004 (AR at 12).

13. On October 1, 2004, the CIS rejected Primo's appeal as untimely because it was filed more than 30 days after the unfavorable decision was made, as required by 8 C.F.R. § 103.3(a)(2). (AR at 12.)

14. On January 4, 2005, the CIS reversed its rejection of Primo's appeal, noting that it mistakenly granted Primo's 18 days to submit its appeal, rather than the correct 33 days, and forwarded the petition to the AAO for further consideration. (AR at 11.)

---

[3] This return was filed under the corporate name of JUGDHAMBA, Inc. Federal Defendants do not dispute that Primo's is the d/b/a for this corporation.

15. With its appeal, Primo's submitted its 2002 and 2003 1120 forms. (AR at 29-55.) Primo's 2002 return indicated a loss of $4,301 before deductions. (AR at 29.) The corresponding Form 1120 Schedule L indicated end of the year assets of $6,299 and liabilities of $5,299, yielding net assets of $1,000 for 2002. (AR at 23.) Primo's 2003 return indicated $5,593 of taxable income before deductions. (AR at 37.) The corresponding Form 1120 Schedule L indicated end of the year assets of $7,280 and liabilities of $2,856, yielding net assets of $4,420 for 2003. (AR at 31.)

16. On January 31, 2005, the AAO affirmed the VSC decision, denying Primo's petition on the grounds that it did not meet its burden of establishing that it had the continuing ability to pay Singh's proffered wage beginning on the priority date, April 30, 2001. (AR at 1-8.)

## III.
## STANDARD OF REVIEW

Judicial review of the CIS decision in this action is governed by the standards set forth in the APA, 5 U.S.C. § 706, which requires that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973) (per curium). Under the APA, 5 U.S.C. § 706(2)(A), the decision by the CIS to deny an immigrant visa petition is entitled to deference by the reviewing court, and should only be reversed if it appears in the record to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." see Augat, Inc. v. Tabor, 719 F.Supp. 1158, 1160 (D.Mass.1989) (citing Richards v. INS, 554 F.2d 1173, 1177 (D.C.Cir.1977)); see also N. Am. Indus., Inc. V. Feldman, 722 F.2d 893, 898 (1st Cir. 1983); Sitar Rest. v. Ashcroft, Civ.A. No. 02-30197-MAP, 2003 WL 22203713, (D.Mass. Sept. 18, 2003); Royal Siam Corp. v. Ridge, 424 F. Supp. 2d 338, 339 (D.P.R., 2006). The CIS abuses its discretion when it bases its decision on an improper understanding of the law, or when its decision is not supported by substantial evidence. Tapis Int'l. v. INS, 94 F. Supp. 2d 172, 174 (D. Mass. 2000); N. Am. Indus., 722 F.2d at 898. The INA grants broad discretion to the CIS to

grant or deny immigrant visa petitions. See Id. The APA standard presumes the validity of agency action. Avena v. INS, 989 F. Supp. 1, 4 (D.D.C. 1997). The reviewing court's function is limited to "determining whether the evidence in the administrative record is sufficient to support the conclusion..." reached by the CIS. Augat, 719 F.Supp. at 1160.

As the Supreme Court has recognized, "[t]he responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government. Over no conceivable subject is the legislative power of Congress more complete." Reno v. Flores, 507 U.S. 292, 305 (1993) (citations and internal quotation marks omitted); accord Landon v. Plasencia, 459 U.S. 21, 34 (1982) ("The power to regulate immigration – an attribute of sovereignty essential to the preservation of any nation – has been entrusted by the Constitution to the political branches."). Thus, the Supreme Court has repeatedly instructed that judicial review in immigration matters is narrowly circumscribed. See INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999) ("judicial deference to the Executive Branch is especially appropriate in the immigration context"); Miller v. Albright, 523 U.S. 420, 434 n.11 (1998) (same); Fiallo v. Bell, 430 U.S. 787, 792 (1977) (same). Specifically, the Court has stated:

> Enforcing the immigration laws, and the conditions for residency in this country, is becoming more difficult. . . . Moreover, the INS is the agency primarily charged by Congress to implement the public policy underlying these laws. . . . Appropriate deference must be accorded its decisions.

INS v. Miranda, 459 U.S. 14, 19 (1982) (citations omitted).

Although the APA prescribes a deferential standard of review, the court "must not yield to the temptation to rubberstamp all decisions." Elatos Rest. Corp. v. Sava, 632 F. Supp. 1049, 1053 (S.D.N.Y. 1986) (quoting Rosedale & Linden Park Co. v. Smith, 595 F. Supp. 829, 834

(D.D.C.1984)). However, the court "must nonetheless give deference to the [CIS's] interpretation of the statute that it is charged by law with administering and enforcing." Id; see also I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 448 (1987). As discussed above, judicial deference is particularly appropriate in immigration matters, which are a "sovereign prerogative" of the executive branch. Landon v. Plasencia, supra at 34, 103 S.Ct. 321, 330, 74 L.Ed.2d 21 (1982); see also Elatos, 632 F.Supp. at 1053, Chi-Feng Chang v. Thornburgh, 719 F.Supp.535, 535 (N.D. Texas 1989). Interpretations by the CIS "need not be the best possible interpretations, and the court should not overturn a decision 'simply because it may prefer another interpretation of the statute.'" Elatos, 632 F. Supp. at 1053 (quoting INS v. Jong Ha Wang, 450 U.S. 139, 145 (1981)). "[C]ourts have refused to overrule agency interpretations of statutory authority in the area of immigration absent an affirmative showing that the interpretation is unreasonable or contrary to legislative intent." Yuk-Ling Wu Jew v. Att'y. Gen., 524 F. Supp. 1258, 1260 (D.D.C. 1981).

## IV.
## ARGUMENT

**The CIS Decision to Deny Primo's Petition for I-140 Petition for an Immigrant Worker Is Reasonable, Supported by the Administrative Record, in Accordance with the Applicable Law, and is Consistent With CIS and Judicial Precedent**

The CIS decision to deny Primo's petition should be affirmed because it was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." Augat, 719 F. Supp. At 1160. The AAO correctly held that Primo's did not meet the requirements for approval of its employment-based immigrant visa petition. The burden of proof in these proceedings rests solely with the petitioner. INA § 291; 8 U.S.C. § 1361; Chi-Feng Chang, 719 F. Supp. at 535, (citing Elatos, 632 F. Supp. at 1053); K.C.P. Food Co., Inc. v. Sava,

7

623 F. Supp. 1080, 1082-83 (S.D.N.Y. 1985).  Primo's has not met that burden.  Because the CIS considered all of the evidence, including supplementation to the initial application, and rendered its decision denying Primo's visa petition in compliance with the applicable law, deference to its decision is appropriate.  Therefore, federal Defendants are entitled to judgment affirming the CIS decision as a matter of law.

Primo's asserts that the CIS has failed to properly adjudicate their petition by not adhering to their own regulations.  (Pl.'s Compl. ¶11).  The CIS decision to deny Primo's petition was clearly consistent with both agency and judicial precedent, based upon substantial evidence, and should be "accorded substantial deference."  La. Philharmonic Orchestra v. INS, 44 F. Supp. 2d 800, 803 (E.D.La. 1999).

When reviewing an I-140 petition, CIS must make a determination of the petitioner's ability to pay the proffered wage as of the time the "priority date" is established.  8 C.F.R. § 204.5(g)(2); In re Wing's Tea House, 16 I. & N. Dec. 158 (Reg. Comm. 1977); In re Great Wall, 16 I. & N. Dec. at 142.   The priority date is established as of  the petition's filing date, which is the date the request for labor certification is submitted  for processing.  8 C.F.R § 204.5(d); Chi-Feng Chang, 719 F. Supp. at 536 ("The filing date is important because it establishes the priority date for the issuance of an immigrant visa to an applicant in this category.").[4]  Primo's Form ETA 750 was accepted for processing on April 30, 2001, which established the priority date for

---

[4] The certification of a petitioner's ability to pay the proffered wage as of the priority date is one of the fundamental purposes of the INA's purpose "'to provide strong safeguards for American labor and to provide American labor protection against an influx of aliens entering the United States for the purpose of performing skilled or unskilled labor where the economy of individual localities is not capable of absorbing them at the time they desire to enter this country.'" H.R.Rep. No. 1365, 82ng Cong. 2nd Session (1952) (quoted in In re Great Wall, 16 I. & N. Dec. 142, 144 (Reg. Com. 1977).

the I-140 petition. (AR at 68). Therefore, the CIS based its decision on a consideration of Primo's ability to pay the proffered wage set forth in Singh's job offer as of this date.

The CIS correctly denied Primo's I-140 petition because it found that the petition did not establish Primo's ability to pay Singh the wage specified in the job offer. When considering a visa petition for an immigrant worker, the CIS "must consider the merits of the petitioner's job offer, so that a determination can be made whether... the wage offer can be met.... It follows that such consideration by the Service would necessarily be focused on the circumstances at the time of filing of the petition." In re Great Wall, 16 I. & N. Dec. at 142.

It is well-established by CIS and judicial precedent that a petitioner's income tax returns provide the basis for determining their ability to pay the proffered wage. See, e.g. Elatos, 632 F. Supp. at 1054; Tongatapu Woodcraft Haw., Ltd. V. Feldman, 736 F.2d 1305 (9th Cir. 1984); In re Sonegawa, 12 I. & N. Dec. 612 (Reg. Com. 1967). Furthermore, the controlling regulation makes it clear that:

> a]ny petition filed by or for an employment-based immigrant which requires an offer of employment must be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage. The petitioner must demonstrate this ability at the time the priority date is established and continuing until the beneficiary obtains lawful permanent residence.

8 C.F.R. § 204.5(g)(2) (2006).

With its petition, Primo's submitted its 2001 Massachusetts Business or Manufacturing Corporate Excise Return (AR at 73-74), which was discounted by the VSC because it was insufficient to allow Primo's net assets to be computed. (AR at 2.) Upon request from the VSC (AR at 75), Primo's then submitted its 2001 Form 1120 U.S. Corporate Income Tax Return,

which showed that it declared a loss of $20,491 for that year.[5] (AR at 21).

In support of its appeal of the VSC's decision to deny its appeal, Primo's cited a May 11, 2004, guidance memorandum from William Yates, CIS's Associate Director of Operations, which provides guidance to CIS adjudicators determining a petitioner's ability to pay the proffered wage. Memorandum from William R. Yates to Service Center Directors ("Yates Memorandum). (AR at 98–100.) Primo's asserts that the memo instructed Service Center Directors to approve I-140 Petitions when "evidence reflects that the petitioner' [sic] current assets are equal or greater than the proffered wage." (AR at 18.) However, the AAO noted that Primo's misquoted the memo, confusing current assets with *net* current assets, as used in the memo. (AR at 4, footnote 2; see also AR at 98–100.) This is an important distinction, since current assets are always offset by current liabilities, which reduces the company's overall net assets that would be available to pay the proffered wage. (AR at 98-100.) Primo's failed to clarify its assets in this regard, and CIS adjudicators are properly guided by the Yates Memorandum to accept only *net* current asset figures. (AR at 99.) In short, the evidence submitted by Primo's, as reflected in the record, failed to show that Primo's net current assets for 2001 were not sufficient to pay the proffered wage.

In Elatos, the INS denied a restaurant's petition for an employment-based work visa, finding that its corporate income tax return for the year in which the priority date fell revealed a

---

[5] The governing regulation does not permit reliance on State tax returns, specifying that "[e]vidence of the ability to pay the proffered wage shall be either in the form of copies of annual reports, federal tax returns, or audited financial statements," and that, in appropriate cases, not applicable in the instant case, other evidence [of the petitioner's ability to pay the proffered wage] may "be submitted by the petitioner or requested by the [CIS]." 8 C.F.R. § 204.5(g)(2).

net taxable income of $5,717, which was less than half of the proffered wage of $11,960. 632 F. Supp. at 1053-1054.[6] The court rejected the plaintiff's argument that the figure for taxable profit did not accurately reflect its net taxable profit, and that the INS should have considered the fact that plaintiff took a $6,672 deduction in depreciation expenses. Id. at 1054. It held that when a tax return was:

> open to differing interpretations with respect to plaintiff's *actual* ability to pay the proffered wage, the onus was on the plaintiff to submit more conclusive evidence such as cash flow data or certified financial statements to clarify the income figures reflected on the return and thus apprise the INS more definitively of its financial position.

Id.

In the instant case, because Primo's petition stated that Singh had been an employee since 2000, the VSC requested that Primo's submit copies of its 2001 Federal Form W-2 Wage and Tax Statements to show the actual amount paid to Singh in that year. (AR at 75.) Primo's did not submit this form; rather, it included only four pay stubs for Singh, all dated for the month of February, 2004. (AR at 93-96.) Primo's again relied on the Yates Memorandum for the principle that these four pay stubs supported its claim that "the record contains credible verifiable evidence that petitioner not only is employing the beneficiary but also has paid or [is] currently paying the proffered wage." (AR at 18.) In its review of the VSC decision, however, the AAO noted Primo's has only provided evidence that it employed Singh during the month of

---

[6] See also Sitar v. Ashcroft, 2003 WL 22203713; Chi-Feng Chang, 719 F. Supp. 532; In re Great Wall, 16 I. & N. Dec. 142; K.C.P. Food Co, 623 F. Supp. 1080. In each of these analogous cases, an INS decision to deny a petition for an immigrant work visa was upheld on the grounds that the evidence, petitioners' federal tax returns, was insufficient to demonstrate an ability to pay the beneficiaries their proffered wage. Furthermore, in each case, petitioners' contentions that the tax return did not accurately represent their ability to pay was rejected.

February and paid him $2,120; "[Primo's] has not demonstrated that it employed [Singh] at any other time or paid him any additional amount. (AR at 6.) Therefore, the undisputed facts clearly support the CIS's determination that Primo's had not satisfied its evidentiary burden to prove its continuing ability to pay the proffered wage, and its decision to reject Primo's petition was reasonable.

Like the plaintiff in <u>Elatos</u>, Primo's contends that the net loss reported in its 2001 tax return does not accurately reflect its net profits. For example, Primo's erroneously claims that the CIS ignored evidence in its 2001 Form 1120, arguing that revenue from investment capital ($110,975.00), gross receipts and sales in excess of $173,000.00 and a gross profit of $110,874.00, is sufficient to show that it had sufficient financial resources to pay Singh the proffered wage. (Pl.'s Compl. ¶ 12.) This argument is misguided. The AAO decision found that such reliance is insufficient, noting that:

> [u]nless [Primo's] can show that hiring [Singh] would somehow have reduced its expenses or otherwise increased its net income, [Primo's] is obliged to show the ability to pay the proffered wage *in addition to* the expenses it actually paid during a given year. [Primo's] is obliged to show that it had sufficient funds remaining to pay the proffered wage after all expenses were paid. That remainder is [Primo's] net income.

(AR at 5.) Primo's 2001 Form 1120 shows a net loss of $20,491. (AR at 21.) Thus, the record clearly indicates that the AAO reasonably determined that Primo's could not pay the proffered wage as of the priority date of April 30, 2001, and properly denied the petition.

The AAO similarly rejected Primo's argument that its depreciation costs reflect an ability to pay the proffered wage. (AR at 5.) Judicial precedent roundly rejects the notion that depreciation deductions are available to pay an employee's proffered wage. <u>See, e.g.</u> <u>Chi-Feng Chang</u>, 719 F. Supp. 532; <u>Elatos</u>, 632 F. Supp. 1049. The AAO concluded that a business's total

assets do not reflect its ability to pay its employees; only those current assets which may be converted to cash are available for this purpose. (AR at 7.) Because Primo's declared a net loss for the year 2001, it has not shown that it can pay Singh the proffered wage of $27,081.60.

In support of its appeal to the AAO, Primo's submitted its 2002 and 2003 1120 forms as evidence of its continuing ability to pay the proffered wage. These figures, cited supra at ¶ 15 of Relevant Facts, were found to be insufficient to demonstrate Primo's ability to pay the proffered wage during 2002 and 2003. (AR at 8.) Furthermore, although Primo's submitted pay stubs indicating that it paid Singh $2,120 during the month of February, 2004, it could not submit evidence to demonstrate its ability to pay the proffered wage for that year. Since its appeal was filed on August 9, 2004, its tax return was not available for that year, and was not considered by the AAO. (AR at 8.)

In its memorandum supporting its appeal of the VSC's decision, Primo's cites In re Sonegawa, 12 I. & N. Dec. 612, for the principle that the approval of an immigrant work visa petition "'is not precluded by the fact that the petitioner's net profit for the previous year is not commensurate with the salary specifications of the labor certification'" if the petitioner can show it had a reasonable expectation of increased business and profits such that it could meet the stipulated wage requirements. (AR at 19.) Primo's reliance on Sonegawa is misplaced because, unlike the plaintiff in Sonegawa, the evidence presented by Primo's was insufficient to support the contention that it had a "reasonable expectation of increasing profits." (AR at 6.) The plaintiff in Sonegawa established that its petition was filed during an uncharacteristically unprofitable year, due to costs incurred from moving her store to a better location, paying rent on both the old and new location during the interim period, as well as a period of down time during

13

which she was unable to do business.  Sonegawa, 12 I. & N. Dec. at 614.  Furthermore, the plaintiff in Sonegawa was easily able to establish its prospects for returning to profitability, including an established reputation as a fashion designer with a dedicated and well-heeled clientele.  Id. at 615.  See also O'Connor v. Att'y. Gen. of the U.S., Civ.A. No. 87-0434-Z, 1987 WL 18243 (D. Mass. Sept. 29, 1997) (holding that INS improperly denied plaintiff's I-140 petition for inability to pay an immigrant worker the proffered wage because it failed to take into account factors such as a consistent financial improvement and increased sales, a move to a better location, and wide acclaim in the local press).

Unlike the plaintiff in Sonegawa, Primo's has not submitted any evidence to suggest a change in its business practices, expenses, restaurant location, or clientele.  In its memorandum, Primo's suggests that the location of its restaurant, adjacent to the Massachusetts State House and Suffolk University, would reasonably lead to increasing profits. (AR at 20.)  However, the AAO dismissed this conclusion as unsupported by any specific facts, noting that:

> If [Primo's] has enjoyed that location for over 20 years, then how it could reasonably contribute to an expectation of increased profits is unclear.  If [Primo's] had recently acquired a more desirable location then this might, at least arguably, lead one to expect that its business would improve in the near future.  If the state house and Suffolk College had recently opened adjacent to the petitioner's location then this, too, might, arguably, cause a reasonable anticipation of improved profits.  If the nearby colleges had recently experienced a significant increase in their enrollment or their on-campus population that, too, might lend itself to such a reasonable expectancy.

(AR at 6.)  The record, however, contains no such evidence, nor does Primo's suggest that its profits will soon increase to the level that they could pay Singh the proffered wage.  While Primo's argues that its gross receipts grew steadily for the years 2001 to 2003, this data is not referenced in relation to its debts or liabilities, and thus says nothing about its actual net profits,

or of its ability to pay.[7]  The AAO rejected Primo's reliance on its gross receipts as insufficient to demonstrate its ability to pay the proffered wage.  (AR at 5.)

Furthermore, the AAO concluded that Primo's projections of increased profits were merely speculative.  (AR at 6.)  Although factors suggesting that a petitioner may be able to pay the proffered wage sometime in the future, the petitioner bears the burden to establish eligibility.  See In re Great Wall, 16 I. & N. Dec. at 144 (citing In re Brantigan, 11 I. & N. Dec. 493 (1966)).  Because the record reflects that as of the priority date Primo's could not pay the proffered wage, Primo's has not met its burden, and thus the VSC and AAO decisions were not arbitrary and capricious.  Therefore, the decision by the CIS to deny Primo's petition was appropriate and supported by the AR, in accordance with the APA. INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999).

---

[7] Primo's represents only its gross receipts: $173,163.00 for 2001, $212,371.00 for 2002, and $249,798.00.  (AR at 20.)

# V.
# CONCLUSION

Based on the foregoing, the Court should grant the federal Defendants' Motion for Summary Judgment to Affirm Administrative Decision.

    Respectfully submitted,

    DEPARTMENT OF HOMELAND
    SECURITY, ET AL.,

    MICHAEL K. LOUCKS
    Acting United States Attorney

By:  /s/ Anton P. Giedt   9/22/2006
    Anton P. Giedt
    Assistant U.S. Attorney
    1 Courthouse Way
    Boston, MA 02210
    617-748-3309 (Voice)
    617-748-3971 (Fax)
    anton.giedt@usdoj.gov

---

**CERTIFICATE OF SERVICE**

Suffolk, ss.    Boston, Massachusetts
    DATE: September 22, 2006

    I, Anton P. Giedt, Assistant U.S. Attorney, do hereby certify that I have this day served a copy of the foregoing upon the Plaintiff 's counsel of record through electronic filing and First Class Mail.

    /s/ Anton P. Giedt
    Anton P. Giedt
    Assistant U.S. Attorney

**PLAINTIFF'S COUNSEL:**
Desmond Fitzgerald, Esq.
Fitzgerald & Company, LLC
18 Tremont Street, Suite 210
Boston, MA 02108
617-523-6320 (Voice)
617-523-6324 (Fax)

**AGENCY COUNSEL:**
Peter Schmalz - Associate Counsel
Citizenship & Immigration Service - Vermont Service Center
U.S. Department of Homeland Security
75 Lower Welden Street
St. Albans, VT 05479
802-288-7842 (Voice)
802-288-7838 (Fax)
Peter.schmalz@dhs.gov